Please be seated. Thank you. Will the clerk please call the next case. 325-0067, Manuel Dimas v. 7447 Enterprises, LLC. Mr. Fink, you may proceed. Good afternoon, and may it please the court, my name is Robert Fink, and I represent the plaintiff appellants Angelo and Georgia Dimas in this matter. So the matter comes before you on a short order granting the summary judgment of the defendants, and the primary basis and first basis of that order is based upon the Illinois Workers' Compensation Act's exclusion. However, the trial court, I believe, failed to take into account that Mr. Dimas was not a direct employee of either of the defendants. In fact, the trial court specifically found that these defendants are, quote, specifically shielded by the exclusive remedy provisions of the Workers' Compensation Act. However, as this court is aware, our Supreme Court has continuously and repeatedly held that that exclusion, barring non-relevant exceptions, only applies to the direct employer. And it is not a, it's an uncontested fact that Mr. Dimas was not a direct employee of either of the defendants in this matter. So the very first basis for the summary judgment, you know, is improper. And the only other basis is that the court found that there is no duty owed, and that that duty, and the only aspect of duty that the court stated or based its decision upon was that of notice. And the court does not provide any analysis, did not provide any analysis, cited no case law, and it provided, the only thing that is stated is that based on the record, there's simply no factual basis to support any knowledge of a dangerous condition of, you know, on these defendants. That by itself ignores several important factors here, including that the defendant conceded certain issues, including the issue that there are material facts in this case. Including that the defendants had the exclusive authority and obligation that they assumed to manage Excel, Excel's business, that they were required to direct, manage, and control that business. They stated that they were unfamiliar with the safety protocols, they failed to implement essential safety measures, and that they had nothing to do at all, really, with Excel, in that those obligations that they took on were, quote, for the bank. The defendant's only means of addressing their corporate representative's statements was to say, oh, well, those aren't binding. Well, either the statements are binding or they're not. If they are binding, then they cannot be contradicted, and summary judgment wasn't appropriate because the admissions are such that they would raise issues of material fact. If those statements are not binding, then contrary evidence could be introduced, but that, of course, would mean that there are still issues of material fact because now a jury is going to have to determine whether or not they are going to believe the sworn testimony of the defendant's chosen corporate representatives or not. Or whether they are going to accept other explanations and other explanations of the same evidence with either way raising issues of material fact. They can't have it both ways. The very fact that they have to contradict the sworn testimony of their chosen corporate representatives to justify entry of summary judgment demonstrates the existence of issues of material fact. What's the jury going to believe? Relative to notice, specifically, the question is, what would a reasonably careful company have done under the same or similar circumstances? And taking into consideration those same factors, such as, or those same admissions and statements, such as that they failed to conduct any kind of regular site inspection, that they failed to properly train, that they knew or should have known that the ladder was too short, that's the subject ladder here. And that they failed to provide proper fall protection. Counsel, that ladder wasn't their ladder, correct? It was not their ladder. And that was, those were allegations that were never raised against these defendants. Aren't these defendants parent companies? No, sir. They may be, I don't know, but that's not relevant to the analysis here. It's relevant to duty, isn't it? It is not, I don't believe, because we have alleged that they are managers, and that their negligence arises, and that their liability arises out of their own actions, as in relative to the failure to properly manage, excel, based on their own negligent acts or admissions, which is permissible. As I know that you are aware, the relevant acts, section 10-5, specifically allows managers to have liability imposed upon them for their own, under court law, which would be acts and omissions. And that is exactly what the plaintiff pled. However, that is not what the defendants ever argued in the case, and it's not what the trial court conducted any kind of analysis pursuant to. The court did not conduct any analysis under a standard tort analysis. Instead, they presumably adopted the defendant's argument of parent-grandparent corporations of excel. Nonetheless, as was made clear in our briefs and in our pleadings throughout this entire, the pendency of the entire case, this is not liability based in parent-child corporate law. It is these defendants' own negligent acts and omissions. Why do they have this duty? Well, the duty arises because it is, and again, this is a duty that they admit in their corporate representative, basically admits in their statement, saying that they have the exclusive. Only them. Only these entities have the right to control excel. They failed to do that. They failed to do that, and they stuck their head in the sand. And that's really what this case is about, is can a manager stick their head in the sand, know that they have failed to conduct… The manager of an LLC that owns another company. That is correct. Yes. The manager. And that's part, could be potentially some of the issues, is the manager has different meanings within different contexts. But in this context, it is the managing LLC of excel and the managing LLC of 7447. So we're specifically, when we refer to managers, we're referring to 7447 and Westside. So the defendants, they never cite to their operating agreement, not once, anywhere. So they cannot take a position contrary to what their corporate representatives have said. And even if they were permitted to, even if they were permitted to try to explain a different position relative to that operating agreement, it would still then raise issues of material fact as to which version is going to be given consideration. This statement made under oath by their chosen corporate representative or not. The other issue here is the plaintiff was deprived of the ability to conduct meaningful and full discovery on issues which the defendants then brought motion for summary judgment pursuant to. Those issues all are relating to the 206 notice, which the rider to the 206 was stricken. Plaintiff was not given prior to the depositions of the corporate representatives, what materials the corporate representatives actually reviewed in preparing for their corporate depositions. That, of course, deprived the plaintiff of a fair opportunity to prepare for the corporate depositions. The plaintiff's multiple subpoenas were quashed and numerous objections were sustained to plaintiff's issue discovery. So the plaintiff was not able to obtain information relative to relevant discovery issues such relating to corporate structure, corporate regulatory filings, their corporate minutes and resolutions, shareholders and corporate information, communications by and between the defendants, including financial information, showing whether or not any of the defendants, either of these defendants, what did they pay for for itself. Control can clearly be either clearly exercised or declined to have been exercised. But either way, plaintiff was robbed of the opportunity to explore even whether or not these defendants could have. Where will I find an affidavit under Rule 191B? You won't. And I don't believe that there was one required. This was a solid text summary judgment and a 191B is not required. They were saying, and the court in fact even found, that plaintiff cannot prove one of the elements of their essential elements of their case. And therefore, Rule 191B affidavit is not required. And ultimately, the information that the plaintiff was deprived of, had the opportunity to obtain, are the exact type of discovery which would go towards the issues that the defendants raised in their motion for summary judgment. I see that I am almost out of time. And as many times as I've done, this is the first time I've ever seen the light. Well, when it goes red, you can enter the intersection on yellow. Thank you. Yes. So I guess really the issues here again are that the trial court erred in that it entered summary judgment based on the workers' compensation exclusive remedy clause, which I think unquestionably is inapplicable to Mr. Demas in this matter. And on notice, which had these defendants not intentionally and admittedly stuck their head in the sand, would not have been the case. And I don't think that they can avoid a notice issue by saying, we didn't know because we stuck our head in the sand. Any questions? No. Okay. We'll have time in response and reply. Mr. Barger, you may respond. Good afternoon, Justices. It wasn't designed for iPads when it was built. The Third District and Virginia surety, as you're all very familiar with, and the Illinois Supreme Court case that affirms the Third District, along with the 1974 Illinois Supreme Court case of Stevens v. Silver Manufacturing Company, are all instructed on interpretation of a written instrument. Whether that be a complaint, Supreme Court rule, or a contract, or an operating agreement, the court says to look at the language as a whole and that that language will illuminate the terms, the specific terms within. Courts don't want to look at language in a vacuum. And Supreme Court Rule 191B, if the Supreme Court wanted to say that 191B did not apply to all cell text motions, the Supreme Court could have said so expressly. It did not. The Third District in the Maley decision, the Fifth District in the Cripton case, and the Second District in the IOTUS, all use the word premature in their decisions when determining whether 191B applies to a cell of text type motion. And I recall the case of IOTUS, the motion for summary judgment took place really early in the litigation. And because of that, the plaintiff was not in a position to even identify the names to put on 191B affidavit. And so under those specific circumstances, it would not be right to apply 191B to a premature cell of text motion. Now the Third District in Martin v. Martin talks of cell of text motions and says a cell of text motion is a type of motion where the move-in doesn't attach affidavit testimony, doesn't attach deposition testimony. That is much different than what we have here. What we have here is a case filed in 2017, and after years of discovery, after time and time and time of opportunity for a plaintiff to learn the identity of the people to put on an affidavit, he did not attach a 191B affidavit to the motion. In addition, the motions were not cell of text motions because they attached voluminous deposition transcripts. As the justices know, the record on this appeal is quite large. There's lots of testimony and lots of deposition exhibits. Council had seven and a half hours, I think, for each of these 206A1 depositions, and there are many exhibits. So drawing your attention to the Supreme Court's decision in Simpkins, in that case, the court said the duty analysis is, the beginning of duty analysis is to ask whether the plaintiff and the defendant stood in such a relationship to one another that the law would impose a duty of care to the benefit of the plaintiff. And the Supreme Court in Marshall v. Burger King talks of four special relationships, innkeeper, guest, carrier, passenger, guardian, ward, business invitory, invitee. And in Marshall v. Burger King, it was a business invitory-invitee relationship. So that's the touchstone. And then the duty analysis factors limit the scope of any duty further. And as the Third District in Newkirk, that case, it says, look at the first two factors, foreseeability and likelihood of injury, and balance those against the burden of imposing a duty. And in that case, the notice issue comes into the duty analysis and affects that analysis. So in this case, we at page 11 of our brief talk about James Reese's father-in-law, Larry Schuster, and how he started this company long before. And it was just an HVAC company. And James Reese graduated with a degree in economics, and he handled accounting for Larry Schuster. Then the important part is we cite to the record at 3298 at page 54, volume 2, for the proposition that later the attorneys at Huck Bloma in Wheaton, Illinois, prepared the business formation documents for other companies within the family tree of companies. And so page 54 of the record, the court can go there, and the circuit court could see, question, showing you Exhibit 41. This is the operating agreement of Excel Mechanical Services. Is it a document that you have seen prior to today? Yes. And did you review that document in preparing your deposition? So that Exhibit 41 is a part of the record, and it's right after the deposition transcript. And in addition, it is pages 4759 to 4806 of the record. But not only that, so we have the plaintiff in his initial brief on page 4. He cites to page 3452 of the record. And that's the deposition testimony of Tom Worley. And Tom Worley, in that testimony, plaintiff is asking him questions about asking him to interpret the operating agreement. If you look to the language of the page before and after for context, we even state an injunction that calls for legal conclusion and contract interpretation. And then he gives his opinion about interpretation of the contract. Now, then in the reply brief at page 2, counsel is citing page 3317 of the record for the proposition that the operating agreement, in this case, creates non-dealable duties that the managing member was vested with the exclusive power and authority to undertake and perform the actions necessary. So the court does not have to scour the record to try to find the operating agreement. And then interpretation of the operating agreement is a question of law. Interpretation of the complaint is a question of law. The complaint sounds in nonfeasance rather than malfeasance. And looking to the language of the operating agreement as whole illuminates what the meaning of this exclusive power and authority is. Because if you look at this very general broad language, what it's talking about is creating officers and officers that it contemplates that the officers will carry out certain duties that the managing member doesn't. And it calls for creating employees. And employees carry out tasks that the managing member and officers wouldn't do. And the affirmative testimony on that same page that counsel cited to 3317, Tom, James Reese, either it's James Reese or Tom Worley, I think it's James Reese, is testifying that despite that language in the operating agreement of exclusive power, that everything was delegated from the managing member because he's an economics major that does accounting. And he delegates to Tom Worley, who is a veteran, who basically rose up from being a worker to being able to run his own company. And then they have a relationship, the corporate relationship, but there's no testimony in the record of any relationship between the plaintiff and Westside Mechanical. There's no testimony. The affirmative testimony in the record is that Saul Rios of Excel Management was his direct supervisor. All the orders and instructions that he received were from Saul Rios. If he encountered a danger on a project, he was supposed to report to Saul Rios. Excel Mechanical had its own safety program. Looking to the benefit, so there's no retention of control over the operative details. And then looking to the direct participant theory that has emerged, and because this all goes back to general corporate law that developed over decades, and then you have the Limited Liability Corporation Act, which is flowing from the creation of corporation law. And is there a limited liability company law? Well, it goes back to the jurisprudence over many decades, and the case law says it's a general rule, and the exception is direct participant theory. Direct participant theory is not nonfeasance, it's malfeasance. It's directly participating in the tort. An example of that would be a company that ratifies a tortious act or directly tells the party to do something that's tortious. The latter in this case and plaintiff's theories are far removed from the latter on the roof at Wheaton High Clinic. And there's no, the affirmative testimony is that Westside Mechanical Group and James Reese did not have any involvement with negotiating the contract, didn't have any involvement with scheduling the work, wasn't there, had no notice, Newkirk, 3rd District, foreseeability. It was not objectively reasonably foreseeable to anyone from Westside Mechanical. It was a direct participant. They don't stand in such a relationship to impose a duty of care for the benefit. 7447 Enterprises, same situation. Affirmative testimony, contractual delegation and removal so as to avoid responsibility and avoid creating a tort relationship, a duty. They weren't there, nobody from 7447 Enterprises there. 7447 Enterprises is, in a nutshell, a holding company for assets and doesn't have any employees and all of the tasks are delegated to a great veteran of the United States military who worked his way up from the bottom to become a corporate executive officer. What does this veteran have to do with anything in this case? Or are you just telling us his biography? This is his biography. Okay, still relevant. It is who he is and he worked his way up and the relationship was that he was the officer that 7447 Enterprises delegated the tasks of running Excel Mechanical and Excel Mechanical and Tom Worley then delegated tasks to various employees, including Union Supervisor Saul Rios and the accounting guy from 7447 Enterprises. The accounting guy from West High Mechanical Group. He's far removed from this on-site job place and he affirmatively did not control the operative details of the work and the operating agreement is all general contractual language and doesn't drop down to details and say, you cannot delegate and it doesn't say that you cannot and that the managing member has to supervise and tell the employee what to do. Thank you, Your Honor. Okay, is there any of those things material facts? There are no genuine issues of material fact. The key is that there was no control over the operative details, no direct participation in a tort. There is no issue of fact that testimony is affirmative and uncontradicted in that respect and counsel cannot create a genuine issue of material fact by interpreting the operating agreement and different contracts in a way, he can't use the operating agreement to create a question of fact when it's plain and unambiguous and it doesn't drop down to specifics. It's not a contractual undertaking by the managing member to control the operative details of the work and directly participate in work on a project for a customer with optometrists and other medical facilities. Thank you, Your Honor. I see your time is up. A question from the court? No. Okay, thank you. Thank you, Mr. Barger. Mr. Fink. You may reply. I'm not interpreting the operating agreement. Nobody interpreted the operating agreement in this case, not the trial judge. The only testimony, the only evidence relative to the operating agreement in this case, anywhere in the record, was from the statements and admissions made by the defendant's chosen corporate representatives. And all we know about those are that they assumed the obligation for the direct control and operations of Excel. That's the uncontroverted testimony in the case. Now, the defendants in their brief say, well, once again, that's not binding. But what we haven't heard is any alternative explanation other than counsel here today saying what the operative agreement is. But that's not part of the record. The record is clear as to the operating agreement. And the only interpretation or anything close to an interpretation of that operating agreement is the statements of their chosen corporate representative. This issue of direct participation, relying on case law that goes back prior to the legislature amending the relevant, you know, the act, 1085 specifically allows for managers to be held responsible and liable for their negligent acts and omissions. It says nothing in the act limits the personal liability of a member or manager imposed under law other than this act, including but not limited to the law of torts. Torts is negligent acts and omissions. To take a line from counsel is if the legislature had wanted to exclude something, they could have. If they wanted to make it required to be affirmative acts, they could have. They did not. They used the word torts. This is literally law school 101. That is negligent acts and omissions. Whether or not these two defendants are far removed from the specific job site is not the issue in this case. It's never been the issue in this case. What is issue, what the negligent acts and omissions that are alleged against these two defendants is that they fail to properly manage Excel such that they put that, Plaintiff wasn't provided safety equipment. He wasn't provided the appropriate ladders. He wasn't provided the appropriate training, which, by the way, their corporate representative also admits that they arranged for training of the plaintiff, including ladder training. So the issue here, again, is not whether or not they were there and present on that day. That is not and has never been any kind of requirement to impose liability on a corporate entity of this type. So I do ask that this court reverse the orders of summary judgment, enter an order that the summary judgment are, in fact, denied and remand this matter for further consideration, including and that the court also enter an order reversing the orders denying plaintiff's ability to obtain the appropriate discovery and to remand the matter for further case management with the trial court such that plaintiff can obtain the requested discovery and bring the matter to a conclusion before the trial court. Thank you. Any questions? Thank you, Mr. Fink. Thank you, Mr. Barger, both for your arguments in this matter this afternoon. This matter was taken under advisement. The written disposition shall issue at this time.